

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF TEXAS**
**BEAUMONT DIVISION**

| | |
|---|---|
| **UNITED STATES OF AMERICA** § | |
| § | |
| § | |
| VS. § | **CASE NO. 1:07-CR-208(1)** |
| § | |
| **RAMON GONZALEZ** § | |

### FINDINGS OF FACT AND RECOMMENDATION ON GUILTY PLEA
### BEFORE THE UNITED STATES MAGISTRATE JUDGE

The District Court referred this matter to the undersigned United States Magistrate Judge for administration of a guilty plea and allocution under Rules 11 and 32 of the Federal Rules of Criminal Procedure. Magistrates have the statutory authority to conduct a felony guilty plea proceeding as an "additional duty" pursuant to 28 U.S.C. § 636(b)(3). *United States v. Bolivar-Munoz*, 313 F.3d 253, 255 (5th Cir. 2002), *cert. denied,* 123 S. Ct. 1642 (2003).

On June 25, 2008, this cause came before the undersigned United States Magistrate Judge for entry of a guilty plea by the Defendant, Ramon Gonzalez., on **Count 1** of the charging **Indictment** filed in this cause. Count 1 of the Indictment charges that from on or about August 1, 2004, and continuing thereafter up to and including December 20, 2006, in the Eastern District

1

of Texas, and elsewhere, Ramon Gonzalez, a/k/a "Alonzo Garcia", a/k/a "Flaco", Adrian Betancourt, a/k/a "G-Money", Johansen Brito a/k/a "Goldilocks", Jose Valadez, Jr., Carol D. Bolton, a/k/a "Homey", a/k/a "Dump Truck", Clarence Magee, Martinez Bracey; and Danny Lynn Scott, a/k/a "Bear"; Defendants herein, and others both known and unknown to the Grand Jury, did knowingly and intentionally conspire with each other, as well as with other persons, to knowingly and intentionally distribute and possess with intent to distribute 5 kilograms or more of cocaine, a Schedule II controlled substance, in violation Title 21, United States Code, Section 841, all in violation of Title 21, United States Code, Section 846.

Defendant, Ramon Gonzalez, entered a plea of guilty to Count 1 of the Indictment into the record at the hearing.

After conducting the proceeding in the form and manner prescribed by Federal Rule of Criminal Procedure 11 the Court finds:

    a.    That Defendant, after consultation with counsel of record, has knowingly, freely and voluntarily consented to the administration of the guilty plea in this cause by a United States Magistrate Judge in the Eastern District of Texas subject to a final approval and imposition of sentence by the District Court.

    b.    That Defendant and the Government have entered into a plea agreement which was disclosed and addressed in open court, entered into the record, and placed under seal.

    c.    That Defendant is fully competent and capable of entering an informed plea, that Defendant is aware of the nature of the charges and the consequences of the plea, and that the plea of guilty is a knowing, voluntary and freely made plea. Upon addressing the Defendant

personally in open court, the Court determines that Defendant's plea is voluntary and did not result from force, threats or promises.  *See* FED. R. CRIM. P. 11(b)(2).

      d.      That Defendant's knowing, voluntary and freely made plea is supported by an independent factual basis establishing each of the essential elements of the offense and Defendant realizes that his conduct falls within the definition of the crime charged under 21 U.S.C. § 846.

## STATEMENT OF REASONS

As factual support for Defendant's guilty plea, the Government presented the following evidence, which was admitted into the record at the plea hearing.  *See Factual Basis and Stipulation*.  If the case proceeded to trial, the Government and Defendant agreed and stipulated to the information set forth in the factual basis which would be used by the Government in support of the Defendant's plea of guilty.  The Government and Defendant agreed that the Government would have proven that Defendant is one and the same with the person charged in the Indictment and that the events described in the Indictment occurred on the dates and in the places alleged in the Eastern District of Texas and the Southern District of Texas.  The Government and Defendant agreed that the Government would have proven, through the testimony of witnesses and through admissible exhibits, beyond a reasonable doubt, each and every essential element of the offense alleged; specifically, the Government would have proven certain stipulated facts set forth in the *Factual Basis,* on file in the record of this cause, as follows:

      Beginning on or about August 1, 2004, Ramon Gonzalez engaged in a conspiracy to

distribute and possess with intent to distribute cocaine in large quantities. The said conspiracy continued until its interruption by law enforcement on approximately December 20, 2006. During the course of the conspiracy, Ramon Gonzalez acquired bulk quantities of cocaine from a source of supply operating out of Mexico. During the course of the conspiracy, Ramon Gonzalez employed a number of co-conspirators to assist him. The co-conspirators employed by Ramon Gonzalez include co-defendants Adrian Betancourt, Jose Valdez, Jr., and Carlos Moreno. Additional co-conspirators charged in relation to this conspiracy in the Southern District of New York include Horatio Aguirre and Carlos Moreno.

The Government would further show that when bulk quantities of cocaine were received by this organization in Houston, Texas, Ramon Gonzalez would direct Adrian Betancourt and Jose Valadez, Jr., to package and prepare the cocaine for delivery to buyers. When monies were received as payment for cocaine, Betancourt and Valadez also processed and counted money on behalf of Gonzalez. During the latter part of 2005 and through April 26, 2006, Danny Lynn Scott and his brother, Charles L. Scott delivered quantities of cocaine for the conspiracy to customers in Mississippi, Georgia, Florida, New York, and Massachusetts. Outbound loads of cocaine (East) and inbound (West) quantities of money were transported by vehicle through the Eastern District of Texas.

During the course of the conspiracy, the following quantities of cocaine and money derived from the sale of cocaine were seized by law enforcement officials:

On August 10, 2004, a Jefferson County (Texas) Sheriff's Deputy seized 18 kilograms of cocaine from a black Ford Crown Victoria on IH-10 in Beaumont, Texas. The investigation

concluded that the cocaine had been sold by Ramon Gonzalez to a New Jersey resident named Enrique Morejon and was being transported by Jose Cruz.

On April 17, 2005, police officers in Memphis, Tennessee, stopped a vehicle being driven by co-defendant Johansen Brito. Following a voluntary consent, officers seized $190,430.00 in drug proceeds being delivered by Johansen Brito to Roman Gonzalez in Houston, Texas.

On April 19, 2005, police officers in Dickson County, Tennessee, stopped a vehicle being driven by co-conspirator Carlos Moreno. Following a voluntary consent, officers seized $212,455.00 in drug proceeds being delivered by Carlos Moreno to Ramon Gonzalez in Houston, Texas.

From March 17, 2006, through May 10, 2006, a court authorized wiretap was conducted by Drug Enforcement Administration (DEA) Agents of a cellular telephone used by Carlos Moreno. Intercepted communications revealed that on April 24, 2006, Charles L. Scott left Houston, Texas, driving a quantity of cocaine on behalf this conspiracy to customers in Mississippi and New York. Evidence from the wiretap reflected that after making a cocaine delivery to customers in Mississippi, Charles L. Scott was directed to pick up money from Johansen Brtio in New York before meeting Carlos Moreno in Boston, Massachusetts, to deliver 10 kilograms of cocaine. On April 26, 2006, agents interdicted Charles S. Scott in Boston, MA, and seized 10 kilograms of cocaine, two firearms (pistols) and $104,000.00.

Qualified laboratory analysts from the Jefferson County Regional Crime Laboratory and Massachusetts State Crime Laboratory would testify that they analyzed the evidence referenced

above, and determined the seized substances to be cocaine, a Schedule II controlled substance totaling 27.8 kilograms.

Special Agent Dwayne Dodds of the Drug Enforcement Administration would offer expert testimony that during the relevant time period charged in the Indictment, the wholesale price per kilogram of cocaine in Houston, Texas, averaged $15,000.00.  Additionally, Agent Dodds would testify that during the same period of time, the average price per kilogram of cocaine in the Eastern United States (where much of the cocaine was trafficked) was $20,000.00. Therefore, it would be Agent Dodds' expert opinion that the combined cash seizures of $506,885.00 (referenced previously) evidenced the proceeds of approximately 25 to 34 kilograms of cocaine.

Defendant, Ramon Gonzalez, agreed with the facts set forth by the Government, as explained above, and signed the *Factual Basis and Stipulation.*  Counsel for Defendant and the Government attested to Defendant's competency and capability to enter an informed plea of guilty.  The Defendant agreed with the evidence presented by the Government and personally testified that he was entering his guilty plea knowingly, freely and voluntarily.

## RECOMMENDED DISPOSITION

**IT IS THEREFORE** the recommendation of the undersigned United States Magistrate Judge that the District Court accept the Guilty Plea of Defendant which the undersigned determines to be supported by an independent factual basis establishing each of the essential elements of the offense charged in **Count 1** of the charging **Indictment** on file in this criminal proceeding.  The Court also recommends that the District Court conditionally accept the plea

agreement.[1]  Accordingly, it is further recommended that, Defendant, Ramon Gonzalez, be finally adjudged as guilty of the charged offense under Title 21, United States Code, Section 846.

Defendant is ordered to report to the United States Probation Department for the preparation of a presentence report.  At the plea hearing, the Court admonished the Defendant that the District Court may reject his plea and that the District Court can decline to sentence Defendant in accordance with the plea agreement, the federal sentencing guidelines and/or the presentence report because the sentencing guidelines are advisory in nature.  The District Court may defer its decision to accept or reject the plea agreement until there has been an opportunity to consider the presentence report.  *See* FED. R. CRIM. P. 11(c)(3).  If the Court rejects the plea agreement, the Court will advise Defendant in open court that it is not bound by the plea agreement and Defendant may have the opportunity to withdraw his guilty plea, dependent upon the type of the plea agreement.  *See* FED. R. CRIM. P. 11(c)(3)(B).  If the plea agreement is rejected and Defendant still persists in the guilty plea, the disposition of the case may be less

---

[1] "(3) Judicial Consideration of a Plea Agreement.
(A) To the extent the plea agreement is of the type specified in Rule 11(c)(1)(A) or (C), the court may accept the agreement, reject it, or defer a decision until the court has reviewed the presentence report.
(B) To the extent the plea agreement is of the type specified in Rule 11(c)(1)(B), the court must advise the defendant that the defendant has no right to withdraw the plea if the court does not follow the recommendation or request.
(4) Accepting a Plea Agreement. If the court accepts the plea agreement, it must inform the defendant that to the extent the plea agreement is of the type specified in Rule 11(c)(1)(A) or (C), the agreed disposition will be included in the judgment.
(5) Rejecting a Plea Agreement. If the court rejects a plea agreement containing provisions of the type specified in Rule 11(c)(1)(A) or (C), the court must do the following on the record and in open court (or, for good cause, in camera):
(A) inform the parties that the court rejects the plea agreement;
(B) advise the defendant personally that the court is not required to follow the plea agreement and give the defendant an opportunity to withdraw the plea; and
(C) advise the defendant personally that if the plea is not withdrawn, the court may dispose of the case less favorably toward the defendant than the plea agreement contemplated." FED. CRIM. P. 11(c)(3)-(5).

favorable to Defendant than that contemplated by the plea agreement. Defendant has the right to allocute before the District Court before imposition of sentence.

## OBJECTIONS

Within ten (10) days after receipt of this report, any party may serve and file written objections to the report and recommendation of the Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(C). Failure to file written objections to the proposed findings of facts, conclusions of law and recommendations contained within this report within ten (10) days after service shall bar an aggrieved party from *de novo* review by the District Judge of the proposed findings, conclusions and recommendations, and from appellate review of factual findings and legal conclusions accepted by the District Court except on grounds of plain error. *Douglass v. United Serv. Auto. Ass'n.,* 79 F.3d 1415 (5th Cir. 1996) (*en banc*); 28 U.S.C. § 636(b)(1). The constitutional safeguards afforded by Congress and the courts require that, when a party takes advantage of his right to object to a magistrate's findings or recommendation, a district judge must exercise its nondelegable authority by considering the actual evidence and not merely by reviewing and blindly adopting the magistrate's report and recommendation. *See Hernandez v. Estelle,* 711 F.2d 619, 620 (5th Cir. 1983); *United States v. Elsoffer*, 644 F.2d 357, 359 (5th Cir. 1981) (per curiam).

**SIGNED this the 25th day of June, 2008.**

_____
KEITH F. GIBLIN
UNITED STATES MAGISTRATE JUDGE